no one dependent upon him, was of considerable means, and the witness McLean says that the brother and sister were on good terms, and that he was "one of the most loving brothers." It does not appear that he had any one dependent upon him, or that he had any other near relative than his sister. All of his surroundings, therefore, are consistent and in many respects strongly indicative of an intent upon his part to create a trust in the fund in favor of his sister in accordance with the declaration of trust which he made; and this, coupled with the declarations which he thereafter made, furnishes sufficient ground to uphold the finding of the court. It is true that his declaration, made to other witnesses, that he made these deposits for the purpose of obtaining thereby more interest, coupled with the fact that he subsequently transferred the whole to his wife, is evidence, and strong evidence, that he did not intend at any time to create a trust in the fund in favor of his sister. But this evidence as to the interest is somewhat militated against by the fact that those accounts usually exceeded the sum of $3,000. The deposit in the name of his first wife was $4,086.50, and, she having died, he transferred the whole amount to the account opened in favor of plaintiff, and it continued so to remain until after his remarriage. When he made the transfer of the $1,000, it still left in that account over $3,000, and the final transfer to the defendant in trust swelled the account to a sum beyond $3,000. It does not appear that he had any account in this bank in his own name during this period. It is quite consistent with all that appears that the original intention of Du Bois was to create a trust in favor of his sister, and that he made the deposit with that intention; that subsequent thereto, either by reason of a quarrel with her husband, or influenced by his remarriage, he changed his mind, and attempted to make a disposition of the money in accordance therewith. As we have seen, this he could not do. Upon the whole, the case resolved itself into a question of fact, and upon conflicting testimony and inference the court has found that a trust was created in favor of plaintiff, and we are required by the law to uphold this result. The judgment should therefore be affirmed, with costs. All concur.

(15 App. Div. 556.)

ELLICK v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. April 6, 1897.)

STREET RAILROADS—INJURY TO CHILD ON TRACK—CONTRIBUTORY NEGLIGENCE.
     Contributory negligence is a question for the jury where plaintiff, a boy 9½ years old, started to cross the street when the car by which he was struck was at a sufficient distance for him to cross safely under ordinary circumstances, though when he reached the track he saw the driver increase the speed of the car, notwithstanding which he attempted to cross.

Appeal from trial term, New York county.

Transferred from First department.

Action by Arthur Ellick, an infant, by John S. Ellick, his guardian ad litem, against the Metropolitan Street-Railway Company, for personal injuries. From a judgment of $3,007.25 damages and

costs, entered upon a verdict in favor of plaintiff, and from an or-
der denying a motion for a new trial made on the minutes, defend-
ant appeals.    Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

John T. Little, Jr., for appellant.
Christopher Fine, for respondent.

HATCH, J.   We are of opinion that the evidence given upon
the trial authorized the jury to find that the defendant was guilty
of negligence in the management and operation of its car at the
place where the accident occurred.    The obligation which rested
upon the defendant was to so manage the car as to have it under
control at the time when it approached and crossed the street cross-
ings.   At this point it was to be expected that pedestrians would
be encountered, in consequence of which it was incumbent upon
the operator of the car to maintain a sharp outlook for them, to
have the car under control, and to so manage the same as not to
endanger the life or limb of persons making use of such crossing.
The evidence authorized the inference that the driver of the car
which inflicted this injury did not meet the measure of this obliga-
tion.   On the contrary, the jury were authorized to find that the
driver accelerated the speed of his car, by whipping up the horses
attached thereto, at about the moment of reaching the crossing, and
that such act upon his part prevented the boy from crossing in safe-
ty, and produced the injury complained of.    Our conclusion in this
regard, however, does not dispose of the case.    The plaintiff was
equally required to use care for his own safety, and the considera-
tion of whether he did so presents the troublesome question in the
case.

The plaintiff was a bright, intelligent boy, nine years and four
months old, was accustomed to attend school and go upon errands
for his mother.   He was conceded to be sui juris.   The injury was
received at about half past 5 o'clock in the evening of November
11, 1895, a time when it was somewhat dark.    The boy had been
sent by his mother upon an errand which required him to cross the
street upon which the defendant's cars were operated.    Upon the
trial he gave the following testimony:

"Before I started to cross  *  *  *  I looked to see a car.  I saw a car com-
ing, and it was about the barber's shop.  That is the third house from Twenty-
Seventh street.  Then it was coming awful fast, pretty fast.  When I saw it
coming it was opposite the barber's shop; that is, three houses down.  Q.  Then
what did you do?  A.  I went to the crossing, and when he got near he whipped
up his horses; then I was walking; then I went to run, and the horses tripped
me.  Q.  Where were you, how near, or were you on the track, or where were
you when he whipped up his horses?  A.  I was pretty near when he whipped
up; pretty near the track.  Q.  When he whipped up his horses?  A.  Yes.
Then I tried to get clear over.  The horses knocked me down.  Then I went
under.  Then somebody picked me from under the car." ,

When the boy made his first observation of the car he stood upon
the curb of the walk at the crossing over which he was about
to pass.   The distance from where he stood to the position oc-

cupied by the car opposite the barber shop was about 65 feet. The distance the boy had to travel to reach the track upon which the car was proceeding was 23 feet 8¼ inches. It is therefore quite reasonable to suppose that the boy could cross the street and track before the car reached that point. At least, the jury would be able to say that it was reasonable for him so to suppose, considering the relative positions of the boy and the car, and the usual rate of speed at which street-surface cars move when propelled by horses. The boy, therefore, had the right to act upon the supposition that he could safely cross the street in front of the car. Acting upon this supposition, he started to cross the street. It does not appear that anything happened while he was traversing this distance from the curb to the track which would occasion him to think that he could not cross in safety before the car reached the crossing, or which ought to have notified him that he could not follow out the intention which controlled his movements. He had the right to rely upon the supposition that the defendant would do no act which would change the condition. In this state of mind, and with the intention of crossing before the car, he reached the track. The defendant then immediately changed the condition by accelerating the speed of the car. As it was done the plaintiff observed it. Under these conditions he was called upon to act. It involved a change of his mind,—either to act upon his original intention, or abandon it. Action was immediately required. While this change and determination was of mental condition, which may be instantaneous in action, yet it involved a change not only of mind but of action. The change and determination to act were required to be formed upon the instant, as it either involved an abandonment of what was originally contemplated, or determination to continue it. It might not be solved correctly,—was not so solved by the boy; but, as defendant had created the necessity, the plaintiff is not to suffer upon that account, unless we can say that the subsequent determination was heedless and negligent. The situation called for the exercise of judgment. If following out the original intention was not so apparently dangerous that prudence would dictate its abandonment, the act cannot be characterized as negligent, even though its result was calamitous. If ordinarily prudent acting boys, situated as this boy was, would usually do as this boy did, then he is to be exonerated for what he did, even though the result showed error in judgment in determining so to do. The situation is somewhat different from one where the person had formed no intention to act in a particular way, and met the danger without occasion for change of purpose, except as it was dictated by the present condition.

In the present case we find ourselves unable to say, as matter of law, whether the act of the boy, in determining to continue on when the situation was changed by the act of the defendant, was an act of negligence or an error of judgment. If the former, no recovery can be had; if the latter, it can be upheld. We think, taking into consideration all of the circumstances, that these questions could only be answered by the jury, and are not to be an-

swered by the court. We are quite willing to concede that, if this boy had been an adult person, then the act of attempting to pass in front of this car, under the circumstances of this case, would have been an act of negligence. But this boy was not an adult. True, he was sui juris. But that alone does not suffice to adjudge him guilty of a negligent act. His conduct must be measured by the obligation to exercise due care proportioned to the danger to be encountered. But the obligation is not measured by the standard which is to be applied to an adult person. It is to be determined with regard to his age and the maturity of judgment which is found present in boys of that age. Thompson v. Railway Co., 145 N. Y. 196, 39 N. E. 709; Thurber v. Railroad Co., 60 N. Y. 326; Stone v. Railroad Co., 115 N. Y. 104, 21 N. E. 712. Having regard, then, to the age of this boy, his intelligence, and the care and circumspection exercised by boys usually of that age, can the court say, as matter of law, that this was a negligent act? We think not. It became a question for the jury upon all the evidence.

The defendant called several witnesses, who testified to circumstances tending to show that the boy ran into the horses or the car. The driver and another witness testified that the boy ran under the horses. Another witness said he seemed to dive between the horses and the car. This testimony is somewhat discredited by the fact that the boy, when taken from under the car, was on the westerly side; and this circumstance corroborates his testimony that he was knocked down before he got entirely over the track. As he was proceeding from east to west, it is difficult to see how he would be upon the westerly side, and almost clear of the car, if he went under the off horse, or went between the horses and the car. The result of such action would naturally be to bring him under the wheels upon the east, instead of the west, side of the car. These considerations serve to show that the whole case was for the jury.

The judgment should be affirmed, with costs. All concur.